IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**URIEL MONTEJANO ZAMORA, et al.,**<br><br>**Defendants.** | 1:05-cr-250-WSD |

### ORDER

This matter is before the Court on Defendant Gabriel Santana Cruz's Objections to Order and Report and Recommendation ("Cruz Obj.") [104], Defendant Rene Urena Gonzalez's Objections to Report and Recommendation ("Gonzalez Obj.") [105] and Defendant Uriel Montejano Zamora's Objections to Report and Recommendation ("Zamora Obj.") [107]. (Defendants Cruz, Gonzalez and Zamora will sometimes collectively be referred to as "Defendants".) The objections are to the Report and Recommendation of Magistrate Judge Janet King dated December 7, 2005 (the "Report and Recommendation"), in which the Magistrate Judge made her recommendations regarding the motions to suppress (i) evidence seized by law enforcement officials on May 3, 2005, and

(ii) statements made by Defendants after their arrests on that day, as well as the motion to dismiss the indictment and the motion to reveal the identity of the confidential informant.  Defendant Cruz's objection is conclusory.  He broadly states that he "objects to the Magistrate's determination that his arrest was lawfully supported by probable cause and that the seizure of his cell phone and any post-arrest statements were constitutionally permissible."  (Cruz Obj. at 1).  These objections do not address the specific findings and analysis in the Report and Recommendation.  Defendant Gonzalez largely reiterates the arguments he made in support of his motion to suppress the search of his cell phone, the search of the minivan and storage facility, and his post-arrest statements.  (Gonzalez Obj. at 1-9).  Defendant Zamora simply adopts the objections asserted by Defendant Gonzalez . (Zamora Obj. at 1).[1]

---

[1] Defendant Zamora acknowledges that the Report and Recommendation was filed electronically on December 7, 2005.  His counsel, however, claims he did not learn of the Report and Recommendation until January 2, 2006.  Defendant Zamora did not request additional time to file objections, but rather elected to adopt "the arguments of Defendant Gonzalez in his objections to the Report."  (Zamora Obj. at 1).  Defendant Zamora does not specifically challenge the Report and Recommendation as it relates to his motion to dismiss the indictment, but the Court nonetheless reviews the Magistrate Judge's recommendation that the motion to dismiss be denied.

*Standard of Review*

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983).  A district judge "shall make a *de novo* determination of those portions of the report or specify proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(c).  This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party."  Jeffrey S. by Ernest S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (quoting H.R. 1609, 94th Cong., § 2 (1976)).

Defendants have not objected to the facts set out by the Magistrate Judge in the Report and Recommendation and the Court adopts those facts as the factual findings of the Court.[2]  The Court will give fresh consideration to the issues for which specific objections are asserted.

---

[2] The Court notes the thoroughness of the Magistrate Judge's Report and Recommendation in this case.  The report, which is fifty-seven (57) pages long, evaluates separately each challenge asserted to the evidence at issue and thoughtfully and fairly evaluates the legal arguments advanced by each party.

*Discussion*

    *a. Motion to Dismiss Indictment filed by Defendant Zamora*

The "sufficiency of an indictment is determined from its face" and it is sufficient if "it charges the language of the statute" alleged to have been violated. United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992).  The Court has reviewed carefully the charges brought against Defendant Zamora.  He is charged with a conspiracy to manufacture methamphetamine (a Schedule II controlled substance), an attempt to manufacture methamphetamine, a conspiracy to knowingly and intentionally possess pseudoephedrine (a List I chemical defined in Title 21) knowing and having reasonable cause to believe that the listed chemical would be used to manufacture methamphetamine, and possession of pseudoephedrine knowing and having reasonable cause to believe it would be used to manufacture methamphetamine.  Each count charges the language of the statute.  That is, each count alleges the elements of the offenses charged in the indictment. Critzer, 951 F.2d at 307-08; see also United States v. Dabbs, 134 F.3d 1071, 1079 (11th Cir. 1998).

The Court's review of the indictment urges the conclusion that the charges satisfy the requirements for a proper charging instrument.  Accordingly, Defendant

Zamora's objections to the findings in the Report and Recommendation with regard to the motion to dismiss the indictment are **OVERRULED**.

    b. *Motions to Suppress*

Defendants move to suppress evidence seized on May 3, 2005, and statements they made after they were arrested. The evidence seized was from the persons of Defendants, and as a result of a search of the storage facility in which the pseudoephedrine was intended to be stored and the automobile in which it was transported. The Court has reviewed the Report and Recommendation findings on each of these matters.

    1. *Searches incident to alleged illegal arrests*

Defendants Gonzalez and Zamora object to their arrests on the grounds asserted previously -- that probable cause for the arrests did not exist. In advancing this argument, they rely principally on two cases. First, they cite United States v. Richardson, 949 F.2d 851 (6th Cir. 1991), for the axiom that police must have probable cause to believe that a person has committed or is committing a crime "before a warrantless arrest may be made." Id. at 858. They then argue that "propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person," and that probable

cause must be "particularized" for each person arrested, relying on Ybarro v. Illinois, 444 U.S. 85, 91 (1991). In short, they argue that they were arrested without warrants based on the criminal activity of others. Defendants Gonzalez and Zamora argue further there is insufficient evidence to link them to the methamphetamine lab which the agents in this case were investigating, that they did not know what was in the boxes they transported in the minivan and which they unloaded at the storage facility and generally that they did not know they were engaged in criminal activity.

These defendants ignore the phrase "without more" in the Ybarro opinion. The test to apply here is best stated in Craig v. Singletary, 127 F.3d 1030 (11th Cir. 1997):

> Probable cause to arrest exists when the facts and circumstances within the collective knowledge of law enforcement officers, or of which they have reasonably trustworthy information, would cause a prudent person to believe that the suspect has committed or is committing an offense. . . "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment.

Id. at 1042. The arresting officers are, among other things, entitled to assess "the totality of the circumstances and the inferences that flow from these circumstances"

6

in evaluating if probable cause exists.  <u>United States v. Wai-Keung</u>, 845 F. Supp. 1548, 1557 (S.D. Fla. 1994), <u>aff'd</u>, 115 F.3d 874 (11th Cir. 1997).  Probable cause must be evaluated "with the common sense view of the realities of normal life."  <u>Craig</u>, 127 F.3d at 1042.

The realities of normal life all point to the existence of probable cause to arrest each of Defendants.  Defendants Gonzalez and Zamora would have the Court simply focus on an incomplete set of isolated facts which they claim support their hypothesis that they were unaware of the contents of the load they transported to the storage area.  To do so would ignore the requirement that the Court review the totality of what occurred and how the conduct of these defendants fit in the transaction as a whole.

Viewing the conduct in its totality, the Court necessarily concludes there was probable cause for the arrests.  The transaction, viewed in its entirety, consists of the coordinated transportation of a large quantity of pseudoephedrine from its source to its storage.  Based on their considerable law enforcement experience, the investigating agents described a continuous series of actions, involving multiple participants, which was compartmentalized to avoid detection.  This was not a case where defendants were casual bystanders who happened unwittingly to participate

in illegal conduct orchestrated by others. They each played a key role. The investigating agents observed the pseudoephedrine transaction beginning with a tip that it would originate from the Vn Pharmacy. They followed the chemical as it left the pharmacy and was transported to its ultimate intended place of storage.

After an hour-long drive from the pharmacy, the pseudoephedrine load arrived at the Corona Restaurant and Bar. There the agents observed Defendants Dominguez and Cruz inspect the minivan cargo. After doing so, these defendants entered the restaurant, exiting shortly thereafter accompanied by Defendants Gonzalez and Zamora. Defendant Zamora immediately took control of the minivan, stepping into the driver's seat (he had not driven the vehicle to the location) and Defendant Gonzalez went to another vehicle apparently to coordinate with its occupants. Thereafter, Defendant Gonzalez entered the minivan taking his place in the passenger seat. Together, these two defendants took the van to a storage facility rented in Defendant Gonzalez's name and for which Defendant Zamora had been given the code to open the facility security gate. Defendant Zamora carefully backed into the storage facility and together he and Defendant Gonzalez began unloading the boxes of pseudoephedrine.

Viewing the entirety of the transaction, the agents observed a well-

coordinated and planned transfer transaction in which Defendants Gonzalez and Zamora played a critical, conclusive role. That this particular cargo would be entrusted to two individuals who were not intricately involved in the criminal activity was not plausible to the investigating agents, nor is it to the Court. The investigating agents' interpretation of the transaction is consistent with the facts, the reasonable inferences that arise from them and is consistent with the realities of common life. See United States v. Dickey-Bey, 393 F.3d 449 (4th Cir. 2004). There was probable cause for their arrests.

The Court reaches the same conclusion with respect to Defendant Cruz. The existence of probable cause for his arrest is significantly supported by the fact that he was observed personally inspecting the minivan contents when it arrived at the restaurant. His conduct clearly was consistent with the investigating agents' view that he was supervising this phase of the operation. In that role, he was obligated to confirm the arrival of the cargo he expected and it was his responsibility to put into place the resources to remove the contraband to a secure facility. That role was entrusted to Defendants Zamora and Gonzalez -- the two people he retrieved from the restaurant after entering it. The facts, the reasonable inferences that arise from them, and the realities of common life all support that

there was probable cause for Defendant Cruz's arrest. The Court therefore concurs there was probable cause for the arrest of Defendants Gonzalez, Zamora and Cruz, their objections based on the legality of the arrests are **OVERRULED**.

### 2. *Searches incident to arrest*

Having concluded that Defendants' arrests were based on probable cause, the Court **OVERRULES** Defendants' objections to the search of their persons incident to arrest based on the legality of the arrests.

The Court next considers Defendants Gonzalez's and Zamora's objections to the search of their respective cell phones on the grounds there were no exigent circumstances justifying the search of the instruments. Specifically, Defendants' argue again that the Fifth Circuit's decision in United States v. Johnson, 588 F.2d 147 (5th Cir. 1979), required the investigating agents to secure the phones, but not to search them until a warrant was issued. Defendants' argument ignores the investigating agents reasonable beliefs regarding the functions and limitations of the cell-phone technology at issue, and they misrepresent Johnson.

In Johnson, a defendant was arrested and his luggage was searched incident to the arrest, without a warrant. The Court stated a warrant was required. The decision is sound. The luggage was static -- its content would not change while a

warrant was procured and the luggage otherwise was in the possession of the authorities. The facts are distinctly different here. In this case the phones were reasonably believed by the investigating agents to be dynamic, subject to change without warning by a call simply being made to the instrument. With each call is the risk that a number stored would be deleted, including the loss of calls made to or from the instrument in connection with the transportation and ultimate secured storage of the pseudoephedrine at issue here. These numbers would have significant evidentiary value. It was the function and limitation of the cell-phone technology which motivated the investigating agents to conduct an immediate search of the phones, rather than seek a warrant. United States v. Ortiz, 84 F.3d 977 (7th Cir. 1996) (warrantless search of pager to preserve electronic evidence allowed); United States v. Richardson, 764 F.2d 1514 (11th Cir. 1985) (search of wallet contents seized in search incident to arrest was permitted). These legitimate concerns were sufficient for the search to be conducted without a warrant.

     The arrests of Defendants Gonzalez, Zamora and Cruz being proper, so were the searches incident to their arrests, and exigent circumstances otherwise authorized the seizure of the cell phones and the search of their electronic contents. Defendants' objections to the seizure and search of the phones are

**OVERRULED**.

### 3. *Search of the minivan and storage facility*

Having concluded that Defendants' arrests were based on probable cause, the Court **OVERRULES** Defendants' objections to the search of the minivan and storage facility on the ground that their arrests were illegal.

Defendants next argue either that there were insufficient exigent circumstances to justify the search of the minivan and the storage facility or that the circumstances cited in the Report and Recommendation were speculative, and thus insufficient to justify the search. They argue specifically that the searches were not permitted without a warrant because the minivan and storage facility had been secured by the investigating agents. The objection ignores historical precedent and the practical realities of the circumstances that existed on May 3, 2005.

The Supreme Court and this circuit have historically allowed the search of an automobile or other vehicle, where it is believed the vehicle contained contraband. California v. Carney, 471 U.S. 386, 390-91 (1985); Pennsylvania v. Labron, 518 U.S. 938 (1996); United States v. Watts, 329 F.3d 1282 (11th Cir. 2003). Here,

12

the facts are undisputed that the vehicle was transporting pseudoephedrine. Indeed, a tracking device authorized by the Court was placed in one of the boxes containing the pseudoephedrine before it was removed from the Vn Pharmacy and placed in the minivan.

It also is axiomatic that a vehicle may be searched incident to an arrest. United States v. Gonzalez, 71 F.3d 819 (11th Cir. 1996) (search of car incident to arrest valid); United States v. Diaz-Lizaraza, 981 F.2d 1216 (11th Cir. 1993) (search of automobile and its compartments allowed incident to arrest). The arrests being valid here, the search of the vehicle was also.

Similarly, the search of the storage facility was valid. While Defendant Zamora does not have an interest in the premises and thus does not have standing to object to this search, United States v. Hastamorir, 881 F.2d 1551, 1559 (11th Cir. 1989), even if he did, his and Defendant Gonzalez's challenge to the search are not persuasive. United States v. Santa, 236 F.3d 662 (11th Cir. 2000), is instructive. Santa involved the search of a residence. Recognizing that the Fourth Amendment restricts warrantless searches of a home, the Eleventh Circuit offered that a warrantless home search may be conducted, if probable cause to search

exists and exigent circumstances are present.  <u>Id.</u> at 668.  Whether exigent circumstances exists must be evaluated on a case-by-case basis.  <u>Id.</u>  "The inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action," such as where there is "danger of flight or escape; danger of harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence; and 'hot pursuit' of a fleeing suspect."  <u>Id.</u> at 669.  The possible destruction of narcotics is a particularly compelling reason for searching without a warrant.  <u>Id.</u>  Whether there are exigent circumstances to allow a warrantless search is evaluated using an objective test, based on the perspective of a reasonable, experienced agent.  <u>Id.</u>  While these are the tests for warrantless home searches, even applying this standard to the commercial storage facility at issue here, the tests are met.

   The facts here show that the storage facility required the agents who approached it to expose themselves to unknown risks and a fluid, potentially dangerous environment.  They knew Defendants Gonzalez and Zamora would be there because they drove the van into the facility and, considering the nature of the criminal conduct being investigated, they were justified in believing they likely were armed.  They also knew a short time earlier two cell phone calls had been made and

there were two individuals in a Maxima with whom Defendant Gonzalez had spoken before he joined Defendant Zamora in the car for the trip to the storage facility. When they entered the facility, the investigating agents did not know who else was there, they expected whoever was there to be armed and they believed it likely the storage facility was itself a methamphetamine manufacturing lab.  In short, the investigating agents reasonably believed the situation was fluid and dangerous, that it was possible their presence might have been detected as they entered the facility and the possibility of destruction of all or part of the pseudoephedrine was significant.  These objective perceptions were reasonable and justified the decision to search the facility and the vehicle because exigent circumstances reasonably were perceived to exist.  Defendants' objections to these searches are **OVERRULED**.

### 3. *Post-arrest statements*

Having concluded that Defendants' arrests were based on probable cause, the Court **OVERRULES** Defendants' objections to their post-arrest statements on the grounds that their arrests were illegal.

Defendants also claim they were not properly given *Miranda* warnings and thus any statements they gave should be suppressed.  The facts simply do not

support this claim.  Rather, the record shows that each of Defendants was given their *Miranda* warnings.  Defendants Zamora and Cruz were advised in Spanish.  To the extent Defendant Gonzalez claims the agent giving the warnings is uncertain whether the rights were given in Spanish or English, assuming the warnings were in English, the record is uncontested that Defendant Gonzalez understands English well, as evidenced by his interaction with law enforcement personnel, and medical personnel who treated him.  The record is clear the warnings were given as required.  United States v. Adams, 1 F.3d 1566 (11th Cir. 1993).

    The record also is clear that each of Defendants waived their rights voluntarily, knowingly and intelligently.  United States v. Barbour, 70 F.3d 580 (11th Cir. 1995).  That is, the statement each defendant gave was neither coerced nor the result of intimidation or deception; rather, the choice to speak was free and deliberate and the right not to speak was waived by each defendant with the full understanding of the nature of the right being abandoned and the consequences of abandonment.  Id. at 585; see also Moore v. Dugger, 856 F.2d 129, 134 (11th Cir. 1988).

    That the defendants may have been restrained does not render their

statements involuntary.  United States v. Mendoze-Cecelia, 963 F.2d 1467, 1475 (11th Cir. 1992).  Instead, each of Defendants, having been read their rights, consciously and deliberately chose to speak with law enforcement agents.  Each of Defendants acknowledged they understood their rights, and they were not threatened nor promised anything.

That Defendant Gonzalez suffered a head wound as a result of physical contact with one of the investigating agents does not render his statement unknowing, involuntary or coerced.  The evidence is undisputed that Defendant Gonzalez, even after his injury, was calm, composed, alert and, even occasionally jovial, during the post-arrest processing.  His reasoning, understanding and communication were unimpaired.  His decision to talk was apparently prompted when, in response to his question, he was told the investigation was being conducted by federal agents and he realized the consequences of his conduct would be severe.  In short, there is no evidence that the injury suffered when he tried to elude the investigating agents affected his actions or decisionmaking in this case in any way.  To the contrary, by his conduct and his admission, the injury did not impair his functioning and, in fact, by his own statement, it did not really bother him.  Defendant Gonzalez's claim that the injury was impairing is not supported by

the facts or any inference that arises from them.  Accordingly, Defendants' objections to the Magistrate Judge's recommendation that the post-arrest statements not be suppressed are **OVERRULED**.

*Conclusion*

For the reasons stated above

**IT IS HEREBY ORDERED** that Defendant Cruz's Objections to Order and Report and Recommendation[104], Defendant Gonzalez's Objections to Report and Recommendation [105] and Defendant Zamora's Objections to Report and Recommendations [107] are **OVERRULED**.  The Court **ADOPTS AS ITS ORDER** the Report and Recommendation issued by the Magistrate Judge. Defendants' motions to suppress [59, 69, 76, 77] and Defendant Zamora's motion to dismiss the indictment [64] are **DENIED**, and Defendant Cruz's motion to reveal the identity of the confidential informant [61] is **GRANTED** as set out in the Report and Recommendation.

**SO ORDERED**, this 21st day of February, 2006.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE